■ In the Matter of JESSE QQ., a Person Alleged to be a Juvenile Delinquent, Appellant. FRANCIS T. MURRAY, as Ulster County Attorney, Respondent. [662 NYS2d 851] —Cardona, P. J. Appeal from an order of the Family Court of Ulster County (Mizel, J.), entered January 31, 1997, which, *inter alia*, granted petitioner's application, in a proceeding pursuant to Family Court Act article 3, to adjudicate respondent a juvenile delinquent.

On December 7, 1995, petitioner filed a juvenile delinquency petition charging respondent with committing acts which, if committed by an adult, would constitute the crimes of assault in the third degree and criminal possession of a weapon in the fourth degree. The petition alleged, *inter alia*, that respondent intentionally caused physical injury to Brian Schug by cutting him on the face with a small dirk which was later found concealed in respondent's underwear. Family Court conducted a fact-finding hearing on May 6, 1996 and June 25, 1996, at which Schug did not testify. In a decision dated September 10, 1996, the court dismissed the assault charge but found that respondent committed the crime of criminal possession of a weapon in the fourth degree. Following a dispositional hearing, respondent was adjudicated a juvenile delinquent* and placed in the custody of the State Division for Youth for one year. Respondent appeals.

Initially, we find no merit in respondent's contention that his statutory right to a speedy fact-finding hearing was violated because it was not commenced within 60 days of his arraignment on January 2, 1996 (*see,* Family Ct Act § 340.1 [2]). The record shows that respondent effectively waived his right to a speedy fact-finding hearing at his arraignment. Such a waiver is permissible (*see, Matter of Willie E.,* 88 NY2d 205, 209-210; *Matter of Joseph CC.,* 234 AD2d 852, 853-854).

We also find unpersuasive respondent's contention that Family Court's decision rendered 78 days after the conclusion of the fact-finding hearing violated his right to a speedy verdict pursuant to CPL 320.20 (3) (d) and 350.10 (3) (d). The Family

---

* Respondent was also adjudicated a person in need of supervision based on a petition apparently filed on January 30, 1996. However, that adjudication is not at issue in this appeal.

Court Act does not mandate the application of these provisions of the Criminal Procedure Law to juvenile delinquency proceedings (see, Family Ct Act § 303.1 [1]). Furthermore, although the decision was not rendered within 60 days after the matter was finally submitted (see, Family Ct Act § 165 [a]; CPLR 4213 [c]), it was still valid (see, Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C4213:4, at 337). In any event, under the particular circumstances of this case, the delay was not unreasonable.

Respondent's primary contention is that Family Court erred in determining that the knife he possessed was a dirk under Penal Law § 265.01 (2). That subdivision prohibits the possession of "any dagger, dangerous knife, dirk, razor, stiletto, imitation pistol, or any other dangerous or deadly instrument or weapon with intent to use the same unlawfully against another". The requisite intent may be presumed by the mere possession of one of the enumerated objects (see, Penal Law § 265.15 [4]; *Matter of Richard B.*, 111 AD2d 166, 167).

Respondent argues that since the term "dirk" is not defined in Penal Law § 265.00, Family Court should have resorted to the dictionary definition of the term, i.e., "a long, straight-bladed dagger formerly carried esp. by the Scottish Highlanders [or] a short sword formerly worn by British junior naval officers" (Webster's Third New International Dictionary 642 [unabridged 1981]). As Family Court noted, however, dictionary definitions are not necessarily controlling in the construction of statutes (see, McKinney's Cons Laws of NY, Book 1, Statutes § 234), particularly where, as here, the term dirk does not have the generally accepted meaning today that it had in the 18th and 19th centuries. Instead, we interpret the term in a manner which will " 'promote justice and effect the objects of the law' " (*People v Ditta*, 52 NY2d 657, 660, quoting Penal Law § 5.00). Penal Law § 265.01 (2) prohibits the possession of instruments which are inherently weapons. Viewed from this perspective and despite our previous observation that a dirk is a type of dagger (see, *People v Thomas*, 40 AD2d 913), we are of the view that a modern test for a dirk is whether the instrument has a blade with a least one sharpened edge which tapers to a point and is primarily intended for use as a stabbing weapon (see, e.g., *People v Pettway*, 233 Cal App 3d 1067, 1071-1072, 285 Cal Rptr 147). The knife recovered from respondent has an over-all length of 2³/₄ inches, including a rubber grip 1¹/₄-inch wide. The blade is the size and shape of an arrowhead. One edge is sharpened and serrated; the other edge is not sharpened. The handle is designed so that it fits into and rests

against the palm of the hand with the blade protruding from between the middle fingers, a design which actually increases its effectiveness as a stabbing weapon. We perceive no utilitarian purpose for the instrument in question and are satisfied that its physical characteristics make it suitable primarily, if not exclusively, for stabbing. Consequently, we find, as a matter of law, that it falls within the scope of the statute as a dirk.

Having correctly determined that the weapon recovered from respondent was a dirk, Family Court properly found that he committed the crime of criminal possession of a weapon in the fourth degree when he failed to offer evidence rebutting the statutory presumption that he intended to use the dirk unlawfully (*see*, Penal Law § 265.15 [4]).

Finally, we reject respondent's remaining contention that he was deprived of his right to deliver a summation, as the record indicates that he was afforded an adequate opportunity to do so in writing.

Mercure, White, Peters and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.